IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| RAJIV RAJKUMAR BATHIJA, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| VS. | § | Civil Action No. 3:24-CV-0526-D |
| | § | |
| U.S. DEPARTMENT OF | § | |
| HOMELAND SECURITY, et al., | § | |
| | § | |
| Respondents. | § | |

MEMORANDUM OPINION
AND ORDER

Petitioner Rajiv Rajkumar Bathija ("Bathija") brings this action alleging unreasonable delay by U.S. Citizenship and Immigration Services ("USCIS") in the adjudication of his application for naturalization. Respondents move to remand this matter to USCIS. For the reasons that follow, the court grants respondents' motion and remands this matter to USCIS.

I

Bathija, a citizen of India, became a lawful permanent resident of the United States on August 8, 2017 pursuant to his employment by a U.S. employer. At the time he became a permanent resident, he was married to Nadiem Abbas ("Abbas"). He and Abbas divorced 21 months later, on May 8, 2019.

On August 11, 2020 respondent U.S. Department of Homeland Security ("DHS") issued Bathija a Notice to Appear in removal proceedings against him, alleging that he had procured his permanent residency via marriage fraud. Bathija appeared before the Immigration Court and, on July 30, 2021, the Immigration Judge ("IJ") granted Bathija's

motion to terminate the removal proceedings on the grounds that DHS had failed to file any documents supporting its marriage fraud allegations.[1]

Bathija filed an Application for Naturalization with USCIS on October 7, 2022. USCIS notified him that it would reuse his previously captured biometric data to run its security checks. USCIS then interviewed him on May 4, 2023. Sometime after the interview, USCIS notified Bathija that he had passed the English language and U.S. government and history tests but informed him: "A decision cannot be made yet about your application." Compl. Ex. I.

Bathija filed this lawsuit on March 5, 2024, ten months after his naturalization interview, alleging that he still had not been notified of any decision on his application. Bathija contends that, under 8 U.S.C. § 1447(b), USCIS was required to issue a decision on his naturalization application within 120 days of the May 4, 2023 interview. He asks the court either (1) to adjudicate the application *de novo* and naturalize him, or, in the alternative, (2) to remand this matter to USCIS with instructions to adjudicate the application within 14 days. Regardless which option the court chooses, Bathija asks that the court establish that the doctrine of *res judicata* bars USCIS from raising an allegation of marriage fraud as grounds for denying the application. Bathija also seeks relief under the Mandamus Act, 28

---

[1] Bathija maintains in this suit that his marriage to Abbas was not fraudulent and that he never gained lawful permanent residency through Abbas, but rather through his employment by a U.S. employer. He contends that the only effect his marriage to Abbas had on the immigration application that led to his lawful permanent residency was the benefit of greater visa availability based on Abbas's country of birth—a fact that he alleges was coincidental and not the intent behind their marriage.

U.S.C. § 1361.

Respondents move to remand, asking the court to grant Bathija's alternative request under 8 U.S.C. § 1447(b) and remand this matter to USCIS with instructions to adjudicate Bathija's application within 60 days. The court is deciding the motion on the briefs, without oral argument.

II

The court first addresses whether, under 8 U.S.C. § 1447, it should adjudicate Bathija's application *de novo* or remand it to USCIS for adjudication.

A

Under the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101 *et seq.*, an applicant who seeks U.S. citizenship must satisfy several requirements, including legal permanent residence in the United States for at least five years, 8 U.S.C. § 1427(a)(1)-(2), proficiency in the English language and understanding of U.S. history and government, *id.* § 1423(a), a showing that he is a person "of good moral character, attached to the principles of the Constitution of the United States, and well disposed to the good order and happiness of the United States," *id.* § 1427(a)(3), and a showing that he is not and has not been opposed to government or law or connected with various organizations or forms of government, *id.* § 1424. He also must show that he was "lawfully admitted to the United States for permanent residence." 8 U.S.C. § 1429. The parties do not dispute that Bathija has satisfied most of these requirements. They only contest whether Bathija was lawfully admitted for permanent residence, or whether he obtained his permanent residency fraudulently via his

-3-

marriage to Abbas.

The INA requires an applicant for naturalization to undergo both an investigation and an "examination" (i.e., interview).  8 U.S.C. § 1446(a)-(b); *see Walji v. Gonzales*, 500 F.3d 432, 434-38 (5th Cir. 2007) (holding that "examination" refers to the naturalization interview).  By law, "[a] decision to grant or deny the application shall be made at the time of the initial examination or within 120 days after the date of the initial examination of the applicant for naturalization[.]"  8 C.F.R. § 335.3(a).  If USCIS fails to adjudicate a naturalization application within 120 days of the interview, "the applicant may apply to the United States district court for the district in which the applicant resides for a hearing on the matter."  8 U.S.C. § 1447(b); *see Walji*, 500 F.3d at 434-38 (holding that § 1447(b)'s 120-day period begins to run on the date of the naturalization interview).  The district court "has jurisdiction over the matter and may either determine the matter or remand the matter, with appropriate instructions, to [USCIS] to determine the matter."  8 U.S.C. § 1447(b).

B

> Although in some circumstances it may be appropriate for the district court to adjudicate a plaintiff's naturalization application in the first instance, the vast majority of district courts remand lawsuits filed under § 1447(b) for USCIS to decide in the first instance whether to grant or deny an application for naturalization.

*Kaliuzhna v. DHS*, 2019 WL 13136762, at *2 (W.D. Tex. Dec. 17, 2019) (citations omitted). This is partly for efficiency and in recognition of the fact that "USCIS—rather than [a] Court—is likely in a better position to review Plaintiff's background investigative file and/or

-4-

weigh the merits of Plaintiff's application in the first instance." *Id.*; *see also INS v. Orlando Ventura*, 537 U.S. 12, 16 (2002) (per curiam) ("Generally speaking, a court . . . should remand a case to an agency for decision of a matter that statutes place primarily in agency hands."). Courts have noted that remand is often an adequate remedy because it "does not wholesale foreclose judicial review of [a] Plaintiff's application, as even following remand, [a] Plaintiff will be permitted to seek judicial review of [his] application pursuant to 8 U.S.C. § 1421(c) in the event USCIS denies [his] application." *Kaliuzhna*, 2019 WL 13136762, at *2 (citing 8 U.S.C. § 1421(c); *Zhang v. USCIS*, 2017 WL 3190559, at *2 (D.D.C. July 26, 2017)).

But there are certain situations in which courts "have elected to exercise their statutory authority to adjudicate the merits of naturalization applications[.]" *Taalebinezhaad v. Chertoff*, 581 F.Supp.2d 243, 246 (D. Mass. 2008) (collecting cases). "[O]ne factor that courts consider when exercising [their] discretion is whether USCIS offers 'good reasons' for its delay in ruling on an application." *Patel v. Mayorkas*, 2023 WL 8582446, at *2 (D.S.C. Nov. 21, 2023) (quoting *Dubon v. Jaddou*, 2022 WL 16949734, at *1 (M.D.N.C. Nov. 15, 2022)). "Courts also consider whether USCIS gives assurances that it will act quickly on an application if the court orders remand, as well as a variety of policy issues, including whether an application presents issues that are particularly well suited to resolution by an agency rather than a court." *Id.* (citing *Dubon*, 2022 WL 16949734, at *1); *see Shalan v. Chertoff*, 2006 WL 42143, at *2 (D. Mass. Jan. 6, 2006). "In the few cases where a district court opted to adjudicate the matter itself, the application had been pending for a lengthy

period and the defendants failed to assure the court that a swift decision could be made on remand." *Rashid v. DHS*, 2017 WL 1398847, at *2 (E.D. Cal. Apr. 19, 2017); *see Kaliuzhna* 2019 WL 13136762, at *3 (emphasis in original) (finding remand inappropriate when "the record clearly indicates that (i) Plaintiff's application has already been subject to a *lengthy* delay, and (ii) USCIS is likely to deny Plaintiff's application"); *Taalebinezhaad*, 581 F.Supp.2d at 246 (collecting cases). Courts have usually concluded that delay is egregiously lengthy such that remand would be inappropriate when two or more years have passed since the plaintiff's naturalization interview and USCIS has failed to provide the court with assurance as to when it will perform. *See, e.g.*, *Nagem v. United States*, 480 F.Supp.2d 877, 883-84 (N.D. Tex. 2007) (McBryde, J.) (denying remand when almost two years had elapsed since naturalization interview); *Astafieva v. Gonzales*, 2007 WL 1031333, at *3 (N.D. Cal. Apr. 3, 2007) (denying remand when almost 3 years had elapsed since naturalization interview); *Kaliuzhna*, 2019 WL 13136762, at *3 (denying remand when almost 3 years had elapsed since naturalization interview); *see also Maxwell v. Nielsen*, 2018 WL 6304886, at *6 (E.D. Cal. Dec. 3, 2018) (denying remand when plaintiff's case had been in federal court for 4 years, because remand would "only add to the delay for no good purpose")

C

The court concludes that it should remand this matter to USCIS to adjudicate Bathija's application in the first instance.

First, respondents have provided a reasonable explanation for the delay in adjudicating Bathija's application: that USCIS needed to resolve the marriage fraud issue. Respondents

maintain that USCIS needed "time to review the evidence that its agents collected when they investigated the legitimacy of [Bathija's] first marriage, and to analyze whether that evidence supported the denial of [his] application." Rs. Reply (ECF No. 13) at 2. According to respondents, USCIS recently completed the necessary analysis of the marriage fraud issue and "is now prepared to issue a prompt decision on [Bathija's] application, after advising him of the adverse evidence and affording him an opportunity to submit rebuttal evidence." *Id.*

Second, the delay in this case has not been lengthy—only 10 months elapsed between the date of Bathija's naturalization interview and the date he filed this action—and respondents have committed that USCIS will adjudicate Bathija's application within 60 days, which helps to resolve Bathija's concern that leaving the resolution of his application to USCIS will render him perpetually in limbo.[2] Although 60 days is longer than Bathija's requested 14 days, this length of time is appropriate so that USCIS may, if necessary, comply with 8 C.F.R. § 103.2(b)(16)(i) by providing notice of intent to deny and giving Bathija the opportunity to rebut adverse evidence. Even if USCIS ultimately does not deny Bathija's application, ordering USCIS to adjudicate within 60 days versus 14 days will likely provide Bathija a decision in a shorter time than would be possible were this court to adjudicate the application *de novo*.

---

[2]Bathija's quibble with the phrasing of respondents' commitment "elevates semantics over substance." Rs. Reply (ECF No. 13) at 1. The court reads respondents' statement that USCIS "is prepared to adjudicate [Bathija's] application within 60 days of the Court's remand order," Rs. Br. (ECF No. 6) at 2, as a definitive assurance that it will adjudicate the application within that time frame, particularly considering that respondents' suggested order proposes that the court *order* USCIS to do so.

Third, Bathija contends that, if the court remands this matter, he has a "valid concern[] that the [respondents] will engage in retaliation for the Petitioner's bringing this action against [him]." P. Br. (ECF No. 7) at 14. But Bathija has not identified any basis for this concern. "In the absence of clear and convincing evidence to the contrary, '[a] presumption of regularity attaches to the actions of Government agencies.'" *10 Ring Precision, Inc. v. Jones*, 722 F.3d 711, 725 n.79 (5th Cir. 2013) (quoting *U.S. Postal Serv. v. Gregory*, 534 U.S. 1, 10 (2001)). Because Bathija has provided no evidence that rebuts this presumption, the court concludes that this is not a valid ground on which to deny remand.

III

Bathija requests that, even if the court remands this matter to USCIS, the court limit the order on *res judicata* grounds to bar USCIS from denying his application based on allegations of marriage fraud.

A

The INA provides that "the findings of the Attorney General in terminating removal proceedings or in canceling the removal of an alien . . . shall not be deemed binding in any way upon the Attorney General with respect to the question of whether such person has established his eligibility for naturalization[.]" 8 U.S.C. § 1429. Courts have recognized that, under the plain language of this provision, an IJ's resolution of an alien's removal proceedings in the alien's favor "has no claim preclusive or issue preclusive effect on the USCIS's decision regarding his eligibility for naturalization." *Nesari v. Taylor*, 806 F.Supp.2d 848, 868 (E.D. Va. 2011); *see Francois v. USCIS*, 2021 WL 3406338, at *5 (D.

Ariz. Aug. 4, 2021). This is because "neither the Board [of Immigration Appeals] nor [IJs] have jurisdiction to determine an alien's eligibility for naturalization." *In re Hidalgo*, 24 I.&N. Dec. 103, 105-06 (BIA 2007); *see also Mobin v. Taylor*, 598 F.Supp.2d 777, 780-81 (E.D. Va. 2009); *Application of Martini*, 184 F. Supp. 395, 399 (S.D.N.Y. 1960) (holding that naturalization and removal are entirely different matters and that "[p]resence in the United States, lawful or unlawful, does not affect the right to naturalization"). Although "[t]he doctrine of *res judicata* applies to administrative adjudications in the immigration context," it operates in situations where there is a valid final judgment to "preclude[] a second suit between the *same parties* on the same claim when there was an opportunity to reach the merits in the first litigation." *Chavez-Mercado v. Barr*, 946 F.3d 272, 275 (5th Cir. 2020) (citations omitted) (emphasis added); *see Hammami v. Barr*, 2019 WL 7454412, at *4-6 (E.D. Cal. Dec. 9, 2019). Consequently, only a prior decision by *USCIS itself* as to a specific alien on a given issue would preclude USCIS from making a contrary decision when adjudicating the alien's later naturalization application. *See Hammami*, 2019 WL 7454412, at *6 (citing *Nesari*, 806 F.Supp.2d at 868-69).

B

Given the INA's directive that *res judicata* should not apply in this situation, USCIS is not bound by the IJ's findings in terminating Bathija's removal proceedings. The court therefore declines to impose a limitation on USCIS's adjudication of Bathija's application that would bar USCIS from considering the marriage fraud issue raised in his removal proceedings.

IV

The court now turns to Bathija's Mandamus Act claim.

A

"[A]n enforcing order under the Mandamus Act may issue only when (i) the plaintiff has a clear right to relief, (ii) the defendant has a clear duty to act, and (iii) no other adequate remedy exists." *Ahmed v. Bitter*, __ F.Supp.3d __, 2024 WL 1340255, at *4 (S.D. Tex. Mar. 28, 2024) (citing *Wolcott v. Sebelius*, 635 F.3d 757, 768 (5th Cir. 2011)). "Even if all three elements are satisfied, the court has discretion to grant or deny the writ of mandamus because of the 'extraordinary nature of the remedy.'" *Id.* (quoting *Wolcott*, 635 F.3d at 768).

B

Because this court has jurisdiction over Bathija's claim under 8 U.S.C. § 1447(b), and because that provision provides a remedy for unlawfully delayed agency action on his naturalization application, mandamus is not necessary for relief. *See Sawan v. Chertoff*, 589 F.Supp.2d 817, 826 (S.D. Tex. 2008) (Rosenthal, J.) (same in context of APA claim for unlawfully delayed USCIS action on asylum application). Accordingly, because Bathija cannot satisfy the third element required for the court to issue an enforcing order under the Mandamus Act, the court declines to grant such relief at this time.

V

Bathija also seeks an award of attorney's fees under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412(d)(1)(A).

Under the EAJA, a litigant who has brought a civil suit against the United States is entitled to attorney's fees and costs if: (1) he is the prevailing party in the matter; (2) the government fails to show that its position was substantially justified or that special circumstances make an award unjust; and (3) the requested fees and costs are reasonable. 28 U.S.C. § 2412(d)(1)(A). A plaintiff is a "prevailing party" if his action resulted in a "material alteration" in the parties' legal relationship and the alteration was "judicially sanctioned." *Petteway v. Henry*, 738 F.3d 132, 137 (5th Cir. 2013). Courts have indicated that a plaintiff who brings an action in the district court pursuant to 8 U.S.C. § 1447(b) becomes a "prevailing party" only once his naturalization application is finally adjudicated by USCIS or the court. *See Ali v. Mukasey*, 543 F.Supp.2d 1272, 1274 (W.D. Wash 2008); *Al-Maleki v. Holder*, 558 F.3d 1200, 1202-03, 1210 (10th Cir. 2009).

Because Bathija's application has not yet been adjudicated, his request for attorney's fees and costs is denied because, at a minimum, it is premature.

\* \* \*

For the reasons explained, the court remands this matter to USCIS and orders USCIS to adjudicate Bathija's naturalization application within 60 days. Although the action is closed based on the judgment entered today, the court retains jurisdiction to ensure that USCIS complies with the judgment and this decision. *See, e.g., Asfour v. Napolitano*, 732

F.Supp.2d 512, 514 (E.D. Pa. 2010).

**SO ORDERED**.

June 5, 2024.

                                              SIDNEY A. FITZWATER
                                              SENIOR JUDGE